**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| MARIO GLENN-EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00194-SNLJ |
| | ) |
| WESLEY FLUHARTY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Mario Glenn-El for leave to

commence this civil action without prepayment of the required filing fee. (Docket No. 5). Having

reviewed the motion and the financial information submitted in support, the Court has determined

that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing

fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court

will dismiss the official capacity claims against defendants Wesley Fluharty and Charles Reed, as

well as the individual capacity claims relating to defendants' alleged denial of access to a grievance

procedure. However, the Court will direct the Clerk of Court to issue process on both defendants

Fluharty and Reed in their individual capacities as to plaintiff's First Amendment claim regarding

denial of religious material, and on defendant Fluharty alone in his individual capacity as to

plaintiff's Fourteenth Amendment equal protection claim.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement as required by 28 U.S.C. § 1915(a)(2). According to plaintiff, he has requested his account statement, but the business office refused to provide it without a "certified document from the courts." (Docket No. 6). Nevertheless, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

2

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri. On September 8, 2020, he submitted a letter to the Court that was construed as a civil action pursuant to 42 U.S.C. § 1983. (Docket No. 1). In the

3

letter, plaintiff alleged that caseworkers Wesley Fluharty and Unknown Reed had discriminated against him on the basis of his religion.

On September 11, 2020, the Court directed plaintiff to file an amended complaint on a Court form. (Docket No. 3). Plaintiff was also directed to either file a motion for leave to proceed in forma pauperis or pay the filing fee. He was given thirty days in which to comply.

On September 28, 2020, plaintiff filed a motion for appointment of counsel. (Docket No. 4). Subsequently, on October 5, 2020, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 5). On October 13, 2020, plaintiff filed his amended complaint. (Docket No. 8).

## The Amended Complaint

Plaintiff's amended complaint is handwritten on a Court-provided 42 U.S.C. § 1983 form. He names two defendants: Caseworker Wesley Fluharty and Caseworker Charles Reed. (Docket No. 8 at 2-3). Both are alleged to be employed by the Missouri Department of Corrections, and are sued in their official and individual capacities.

Plaintiff alleges that he has been discriminated against on the basis of his religion. (Docket No. 8 at 4). Specifically, he states that he is a Moorish American and belongs to the Moorish Science Temple, and that he is treated differently because he is not a Christian. He claims that in late July of 2020, Caseworker Fluharty refused to get his religious text from property, even though Fluharty would retrieve Bibles for "all those who practice Christianity." Plaintiff identifies the religious text he requested as being a "Moorish Science Temple Kor'on." (Docket No. 8-1 at 7). He states that he needs this text to "practice [his] religion." (Docket No. 8 at 4). Plaintiff further alleges that Caseworker Fluharty called him a "Muslim terrorist," and "failed to give [him an] I.O.R. to follow the grievance procedures." (Docket No. 8 at 4-5; Docket No. 8-1 at 3-4).

4

With regard to Caseworker Reed, plaintiff alleges that beginning in August of 2020, he asked Reed on five separate occasions to retrieve his religious text, but that Reed refused. (Docket No. 8 at 4). Because of this, plaintiff states that he could not practice his religion. (Docket No. 8 at 5). Plaintiff further asserts that Caseworker Reed would not give him an "I.O.R." in order to seek an administrative remedy. (Docket No. 8 at 4-5).

As a result, plaintiff states that he endured mental, emotional, spiritual, and psychological suffering. (Docket No. 8 at 4). He is seeking $999,999 in damages, and for Caseworkers Fluharty and Reed to "no longer be employed in the Department of [Corrections]." (Docket No. 8 at 6).

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Caseworker Fluharty and Caseworker Reed violated his constitutional rights by denying him access to the grievance procedure at the Southeast Correctional Center, by refusing to bring him his religious text, and by denying him equal protection. For the reasons discussed below, the Court will dismiss the official capacity claims against both defendants. The Court will also dismiss the individual capacity claims relating to the denial of access to the grievance procedure, and the individual capacity claim against Caseworker Reed regarding equal protection. However, the Court will direct the Clerk of Court to issue process on both defendants Fluharty and Reed in their individual capacities as to plaintiff's First Amendment claim regarding denial of religious material, and on defendant Fluharty alone in his individual capacity as to plaintiff's Fourteenth Amendment equal protection claim.

### A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public

employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, both Caseworker Fluharty and Caseworker Reed are alleged to work for the Missouri Department of Corrections. As such, the official capacity claims against them are actually claims against the State of Missouri itself.

### i.    Official Capacity Claims for Money Damages

To the extent that plaintiff is seeking damages, he has failed to state an official capacity claim. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

Even if the State of Missouri was a person for purposes of § 1983, plaintiff's official capacity claims for money damages would still fail. The reason is that in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity.

6

*Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). In this case, there is no indication that the State of Missouri has waived its sovereign immunity. *See* Mo. Rev. Stat. 537.600 (explaining that sovereign immunity is in effect, and providing exceptions). As such, the Eleventh Amendment bars plaintiff's claims.

As discussed above, the State of Missouri is not a person for purposes of a 42 U.S.C. § 1983 claim. Moreover, the doctrine of sovereign immunity bars suit against a state official acting in his or her official capacity. Therefore, with regard to plaintiff's official capacity claims for money damages, such claims must be dismissed.

### ii.    Official Capacity Claims for Prospective Injunctive Relief

To the extent that plaintiff is seeking prospective injunctive relief, his official capacity claims are not necessarily barred. *See Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for *money damages* under § 1983") (emphasis added); and *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (explaining that state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment). Nevertheless, plaintiff has failed to state a claim against the State of Missouri.

A governing body can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official... policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or

7

custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can assert the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the...official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

8

Finally, plaintiff can assert liability against a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has failed to present facts demonstrating that his constitutional rights were violated due to an unconstitutional policy, an unconstitutional custom, or a deliberately indifferent failure to train or supervise on the part of the State of Missouri.

First, none of plaintiff's facts support the proposition that the Missouri Department of Corrections has an unconstitutional policy with regard to religious texts. That is, plaintiff's facts point to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." Plaintiff accuses Caseworker Fluharty and Caseworker Reed of refusing to provide him with a religious text from his property, but does not provide any facts showing that Fluharty and Reed were acting according to any policy.

Second, plaintiff's facts do not establish that his constitutional rights were violated due to an unconstitutional custom. In particular, plaintiff has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that officials were deliberately indifferent to or tacitly authorized such misconduct. His allegations, rather than

9

indicating widespread misconduct, focus on things that have happened to him, and are insufficient to show they were the result of a custom on the part of the Missouri Department of Corrections.

Similarly, plaintiff has not shown a "pattern of similar constitutional violations by untrained employees," which is necessary to demonstrate a failure to train. Instead, as noted above, his allegations relate to his own experiences with two caseworkers, and do not show the existence of a pattern.

For all these reasons, to the extent that plaintiff is seeking prospective injunctive relief, he has failed to state a claim against the State of Missouri. Therefore, his official capacity claims must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

## B. Individual Capacity Claims

Plaintiff alleges that Caseworker Fluharty and Caseworker Reed both prevented him from accessing his institution's grievance procedure, denied him equal protection, and denied him the ability to exercise his religion.

### i.    Grievance Claims

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*,

997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff asserts that both Caseworker Fluharty and Caseworker Reed failed to give him an "I.O.R.," denying him access to his institution's grievance procedure. However, as noted above, a prison grievance procedure is a procedural right only and does not confer upon plaintiff a substantive right. It therefore follows that the alleged denial of access to a grievance procedure does not constitute a violation of plaintiff's constitutional rights. As such, the individual capacity claims against Caseworker Fluharty and Caseworker Reed with regard to the alleged denial of access to a grievance procedure must be dismissed.

### ii.    First Amendment Claims

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. Const. amend. I. Pursuant to the Free Exercise Clause, an individual has the right to believe and profess whatever religious doctrine he or she desires. *In re Kemp*, 894 F.3d 900, 907 (8th Cir. 2018). Moreover, the government may not compel religious belief, punish the expression of religious doctrines, impose special disabilities based on religious views or religious status, or lend its power to a particular side in controversies over religious authority or dogma. *Id.*

Under the Free Exercise Clause of the First Amendment, a plaintiff must first raise a question of fact regarding whether the prison has placed a substantial burden on his ability to

11

practice his or her religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). *See also Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (stating that "[a]s an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief"). "To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

In this case, plaintiff has alleged a violation of the First Amendment's Free Exercise Clause that is sufficient for purposes of 28 U.S.C. § 1915 review. Plaintiff has presented facts that he is a member of the Moorish Science Temple, and that he needs a specific religious text, the "Moorish Science Temple of America Kor'on," in order to practice his religion. He further alleges that despite his repeated requests, Caseworker Fluharty failed to retrieve this text from his property, even though such requests have been granted for Christians needing their Bibles. Similarly, he states that on at least five separate occasions, he asked Caseworker Reed to retrieve this text, and Reed also refused, keeping him from practicing his religion. The Court must accept these allegations as true and make all reasonable inferences in favor of the plaintiff. *Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, the Court will direct the Clerk of Court to issue process on Caseworker Fluharty and Caseworker Reed in their individual capacities as to plaintiff's First Amendment claim of denial of religious material.

### iii.    Equal Protection Claim

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). The dissimilar treatment of dissimilarly situated people does not violate equal protection. *Id.* As such, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he or she was treated differently than others who were similarly situated. *Kemp*, 894 F.3d at 909. Unless the plaintiff can make a threshold showing that he or she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim. *Id.* The plaintiff must also show that "the different treatment is based upon either a suspect classification or a fundamental right." *Patel*, 515 F.3d at 815.

Here, plaintiff has not alleged any facts against Caseworker Reed demonstrating that Reed treated him differently than similarly situated inmates. That is, plaintiff does not assert that Reed failed to bring him these texts because he was not a Christian, as he does with Caseworker Fluharty. Thus, there is no threshold showing of dissimilar treatment.

However, with regard to Caseworker Fluharty, plaintiff has alleged a violation of the Fourteenth Amendment's Equal Protection Clause that is sufficient to survive 28 U.S.C. § 1915 review. In particular, he claims that Caseworker Fluharty treated him differently because of his religion. He states that Caseworker Fluharty would retrieve the Bibles of Christians from property, but would not give him his religious text. He further asserts that Caseworker Fluharty did this because of religious animus, and that Fluharty called plaintiff "a Muslim terrorist." The Court must accept these allegations as true and make all reasonable inferences in favor of the plaintiff. *Jones*, 915 F.3d at 499. As such, the Court will direct the Clerk of Court to issue process on Caseworker Fluharty in his individual capacity as to plaintiff's Fourteenth Amendment equal protection claim.

13

## C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (Docket No. 4). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim...and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable

14

to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against defendants Wesley Fluharty and Charles Reed are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendants Wesley Fluharty and Charles Reed relating to the denial of access to a grievance procedure, and the individual capacity claim against defendant Reed relating to equal protection, are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Wesley Fluharty and Charles Reed in their individual capacities as to plaintiff's First Amendment claim of denial of religious material, and on Wesley Fluharty in his individual capacity as to plaintiff's Fourteenth Amendment equal protection claim. Defendants Fluharty and Reed shall be served in accordance with the waiver agreement this Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this _9th_ day of _December_, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE